José Ramón Benítez, demandante y apelante, *v.* Tabacaleros de Aibonito, Inc., demandada, y Federal Intermediate Credit Bank of Baltimore, interventora y apelada.

Núm. 6879.—*Sometido:* Junio 9, 1936.   *Resuelto:* Diciembre 22, 1936.

*Víctor M. Pons,* abogado del apelante; *Frank Martínez, E. Frank Martínez* y *M. García del Rosario,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

Se interpuso demanda para cobrar un pagaré por $678.48 otorgado por la corporación demandada a Pedro Rosario y endosado por éste al demandante. En aseguramiento de sentencia el demandante embargó en enero 26, 1934, los cánones de arrendamiento que tres distintos arrendatarios debían pagar a la demandada. Se dictó sentencia en rebeldía el 21 de febrero, 1934, y tres días más tarde el Federal Intermediate Credit Bank of Baltimore intervino en el pleito para pedir el levantamiento del embargo, alegando que en 19 de octubre de 1933, por escritura pública, la demandada reconoció adeudar al banco interventor la suma de $45,425.75, comprometiéndose a pagarla en junio 30, 1934; y que en garantía de esa obligación, la demandada cedió al interventor los cánones de arrendamiento sobre dos solares de su pertenencia, que estaban hipotecados a favor del interventor. La alegada cesión se hizo en los siguientes términos:

"Estipulan asimismo las partes que si en el futuro Tabacaleros de Aibonito, Inc., arrendaren las propiedades sujetas a esta hipoteca, o cualquiera de ellas, los cánones de arrendamiento desde la misma fecha en que comenzaren a devengarse, se entenderán cedidos al Federal Intermediate Credit Bank of Baltimore para aplicar, a medida

que los vaya recibiendo, en abono a la deuda aquí reconocida; obligándose Tabacaleros de Aibonito, Inc., a dar las instrucciones procedentes a los arrendatarios para que remesen directamente a dicho Banco el montante de dichos cánones de arrendamiento.''

Ordenado el levantamiento del embargo por la corte inferior, el demandante apeló. Se imputan al tribunal sentenciador los siguientes errores:

1. Al dictar su resolución de mayo 22, 1934, en cuanto desestimó la objeción de que la solicitud de intervención era tardía.

2. Al dictar su resolución de mayo 22, 1934, en cuanto desestimó la objeción de que la solicitud de intervención no había sido notificada a la demandada y ordenó su notificación.

3. Al dictar su resolución de mayo 22, 1934, en cuanto desestimó la objeción de que los hechos alegados en la moción de levantamiento de embargo no constituyen causa suficiente para el levantamiento de embargo solicitado.

4. Al dictar su resolución final de fecha 1 de septiembre de 1934, en cuanto ordenó el levantamiento del embargo de los cánones que pagaba la General Cigar Co.

5. Al dictar su resolución de 1 de septiembre en cuanto ordenó el levantamiento del embargo de los cánones que pagaban don Candelario Morales y don Anastasio Noriega, por cuanto dichos cánones no fueron objeto de la solicitud de levantamiento de embargo radicada por el interventor.

Examinaremos los errores apuntados:

■ 1. El procedimiento para que una persona extraña pueda intervenir en una acción o procedimiento judicial está regulado por el artículo 72 del Código de Enjuiciamiento Civil, que lee así:

''Art. 72.—Cualquiera persona antes de la celebración del juicio podrá intervenir en una acción o procedimiento, si tuviere interés en el asunto en litigio, en el éxito de cualquiera de las partes, o algún derecho en contra de ambas. Esta intervención tiene lugar cuando a un tercero se le permita ser parte en la acción o procedimiento seguido entre otras personas, ya asociándose al demandante para reclamar lo que se pretenda en la demanda, o ya uniéndose al demandado para oponerse a las pretensiones del demandante, o pidiendo algo en sentido adverso a las reclamaciones de demandante y demandado, cuya inter-

vención se efectúa por medio de demanda, exponiendo en ella los motivos en que se funde, presentada con permiso de la corte, y notificada a las partes que no hubieren comparecido y a los abogados de las comparecidas, quienes podrán contestar o alegar una excepción a ella, como si fuese una demanda ordinaria.''

Arguye el demandante que la intervención debió ser denegada por haberse solicitado muy tarde, o sea después de haberse anotado la rebeldía de Tabacaleros de Aibonito, Inc., y registrado sentencia en su contra.

La jurisprudencia de este tribunal anterior al caso de *T. Rodríguez & Hnos., S. en C.* v. *Corte,* 40 D.P.R. 874, dió una interpretación estricta y restrictiva a las disposiciones del artículo 72 del Código de Enjuiciamiento Civil, no permitiendo la intervención cuando ésta se solicitaba después de haberse celebrado el juicio y dictado sentencia. Véanse: *Pillot* v. *Pillot,* 21 D.P.R. 201; *Martínez* v. *Bryan,* 24 D.P.R. 384; *Fernández* v. *Obén,* 26 D.P.R. 150, y *Sabalier* v. *Iglesias,* 33 D.P.R. 492.

En *T. Rodríguez & Hnos.* v. *Corte,* supra, un acreedor que había embargado con posterioridad a otros dos embargantes, solicitó permiso para intervenir después de haberse vendido los bienes embargados, por orden de la corte, dictada de acuerdo con una estipulación celebrada por los dos acreedores que habían embargado antes que el interventor. Y esta Corte Suprema resolvió:

''De todos modos, el interés que tenía el interventor en este caso no era en la validez del arreglo de una reclamación existente entre la parte demandante y el demandado, sino en los bienes embargados; y, no habiéndose celebrado un verdadero juicio, *o aun si se hubiese celebrado,* a un acreedor que tiene un gravamen le asiste el derecho de intervenir y de ser oído, independientemente de las disposiciones técnicas del artículo 72. Vienen a escena los poderes inherentes y otros artículos del Código de Enjuiciamiento Civil. El derecho de una corte de permitir a un acreedor que tiene un gravamen ser oído, e impugnar los procedimientos cuando se han embargado bienes, no puede estar sujeto a dudas.''

La decisión que acabamos de citar vino a ratificar la dictada en el caso de *Mari* v. *Mari y Royal Bank of Canada,* 26 D.P.R. 665, 670, por la que se resolvió por vez primera en esta jurisdicción que los tenedores de gravámenes sobre propiedades envueltas en un litigio o cuyos derechos puedan ser afectados por la sentencia tienen derecho a intervenir. Véanse los casos allí citados y especialmente 20 R.C.L. 684, sec. 20, y 2 R.C.L. 879 a 883.

Más tarde, en *Casanova* v. *Carballeira, Juez,* 41 D.P.R. 850, esta corte sostuvo que el remedio de intervención existente en el derecho civil e incorporado a nuestros estatutos al adoptarse las disposiciones del Código de California sobre la materia, puede ser utilizado por el que reclame como suya una propiedad embargada como perteneciente a otra persona o por el que reclame cualquier gravamen o derecho sobre la propiedad embargada; y que el hecho de que el interventor pueda hacer uso del remedio de tercería no es óbice para el ejercicio de su derecho de intervención. Véase *Murray* v. *Tabacaleros de Bayamón,* 43 D.P.R. 210.

Es indudable que de acuerdo con la jurisprudencia citada, el interventor en el presente caso tenía el derecho a intervenir en el pleito pendiente desde el momento en que se practicó un embargo sobre bienes que él reclama como suyos a virtud de la cesión que le hiciera la corporación demandada. Lo único que nos falta considerar y resolver ahora es si la intervención es tardía por el hecho. de haberse interpuesto después de dictada la sentencia en rebeldía.

Ya hemos visto que en el caso de *T. Rodríguez & Hnos.* v. *Corte,* supra, esta corte resolvió que ''no habiéndose celebrado un verdadero juicio, o *aun si se hubiese celebrado,* a un acreedor que tiene un gravamen le asiste el derecho de intervenir y de ser oído, independientemente de las disposiciones técnicas del artículo 72.'' Aunque la frase *o aun si se hubiese* celebrado debe ser considerada como un *dictum,* toda vez que en el caso a que se refería la opinión no se había celebrado juicio alguno, creemos que es muy difícil en-

contrar diferencia sustancial alguna entre dicho caso y el de autos. En el caso que hemos citado, la propiedad en controversia fué vendida mediante estipulación entre las partes originales del litigio, a la que se dió el mismo efecto que una sentencia, antes de la intervención. En el caso de autos el demandado no contestó la demanda y se dictó sentencia en rebeldía, antes de la intervención. En uno y otro caso la cuestión litigiosa entre demandante y demandado había sido resuelta antes de que la demanda de intervención fuera interpuesta.

La jurisprudencia que hemos examinado parece establecer una distinción entre aquellas intervenciones que tienen por objeto la discusión de los méritos de la controversia entre demandante y demandado y aquéllas cuyo único objeto es la protección de los derechos del interventor sobre propiedad embargada y sobre la cual se trata de hacer efectiva la sentencia dictada o que se pueda dictar en el pleito, sosteniendo que la primera clase de intervenciones deben ser interpuestas antes del juicio, de acuerdo con los requisitos técnicos del estatuto, y que las que se refieren simplemente a la determinación de los derechos respectivos sobre propiedad embargada pueden ser interpuestas en cualquier momento, siempre que el interventor actúe con la debida diligencia.

De la obra Ruling Case Law copiamos lo siguiente:

"Prácticamente todos los estatutos sobre la materia y todas las decisiones de las cortes, donde no están controladas por el estatuto, son al efecto de que el interventor debe ser diligente y no culpable de negligencia inexcusable (*laches*) después de tener conocimiento del pleito, y que él no tiene derecho a retrasar a los litigantes originales ni a retardar la celebración del juicio. A veces se presenta la cuestión de si una intervención puede efectuarse después de dictada sentencia final. Si no está relacionada con los méritos de la controversia y no ha de dilatar la acción principal, ni ha de afectar necesariamente cualquiera sentencia que se hubiere dictado en el caso, la intervención puede ser permitida lo mismo después que antes de una sentencia final." 20 R.C.L. 688, Sec. 27.

En la nota que aparece en 123 A. S. R., páginas 295 y 309, se dice:

"Se presenta algunas veces la cuestión sobre si una intervención puede hacerse después de sentencia final. Si no se refiere a los méritos de la controversia, como cuando se trata de un procedimiento para determinar la validez de un embargo o si una propiedad específica está sujeta al mismo, la intervención no necesita dilatar la acción principal ni tampoco afectar la sentencia que se hubiere dictado. Por lo tanto, en tales casos, no existe razón alguna por la cual una intervención no pueda ser permitida, lo mismo antes que después de sentencia final." (Citas.)

"Llegamos ahora a la consideración de la tercera clase de casos, o sea de aquéllos en que el peticionario de la intervención solamente reclama la propiedad embargada o algún interés sobre la misma, basándose en que la propiedad no estaba sujeta a ser embargada. En todos los casos de esta clase el peticionario tiene usualmente el remedio para recobrar la posesión (*replevin*) o cualquiera otra acción en ley para recuperar la propiedad o su valor. Sin embargo, en muchos estados él no está obligado a recurrir a esos remedios, sino que puede intervenir, y su intervención es tratada como análoga a una acción para recobrar la posesión." (Citas.)

La petición de intervención en el caso de autos presentaba a la consideración de la corte inferior una sola cuestión, o sea si los cánones de arrendamiento eran en la fecha en que se practicó el embargo propiedad de la corporación demandada o si habían pasado ya a ser propiedad del banco interventor, no estando por tanto sujetos a embargo. Esa cuestión en nada podía afectar la controversia principal entre demandante y demandado, ni tampoco la sentencia en rebeldía dictada en el caso. Y creemos que el hecho de que esa misma cuestión haya podido resolverse también en una demanda de tercería, no es óbice para que la corte inferior pudiera resolverla por medio de una simple demanda de intervención, teniendo como tenía jurisdicción sobre todas las partes interesadas y sobre la propiedad envuelta en la controversia. El fin principal que deben perseguir los tribunales es el de administrar justicia rápida y evitar litigios

innecesarios. La corte inferior usó sabiamente de su dis·
creción al interpretar liberalmente las disposiciones del ar-
tículo 72 del Código de Enjuiciamiento Civil, para resolver
una cuestión sobre la cual tenía jurisdicción y que en nada
afectaba la controversia entre las partes originales.

■ 2. El segundo error carece en absoluto de importan-
cia. Es cierto que la petición de intervención no fué noti-
ficada originalmente a la corporación demandada y que el
demandante se opuso por ese motivo a que se permitiera la
intervención. Pero, aun asumiendo que la demandada fuera
parte necesaria en ,el procedimiento de intervención, el de-
fecto de no haberla citado debe ser considerado como sub-
**sanable, al igual** que lo es en el caso de una excepción pre-
via basada en un defecto de partes necesarias. La corte sub-
sanó el defecto ordenando la citación de la parte demandada.
De todos modos el error, si alguno se hubiere cometido, no ha
podido perjudicar en nada al apelante, y debe ser desesti-
mado.

■ 3 y 4. Se refieren estos dos errores a la suficiencia
de los hechos alegados y probados, como fundamento para
el levantamiento de embargo decretado por la corte inferior.

Para sostener las alegaciones de su petición, el interven-
tor presentó en evidencia la escritura pública por la cual
Tabacaleros de Aibonito, Inc., cedió al banco interventor, en
19 de octubre de 1933, los cánones de arrendamiento de los
edificios hipotecados en garantía de la deuda de la deman-
dada a dicho Banco. Dicha escritura no fué impugnada en
manera alguna por el demandante, y éste no presentó prueba
alguna para sostener sus contenciones.

De acuerdo con los términos de la escritura entre la de-
mandada y el banco, tan pronto como las dos propiedades
hipotecadas comenzaran a producir cánones de arrenda-
miento, éstos pasarían a ser propiedad del interventor, para
ser abonados a cuenta de la deuda. La obligación contraída
por la demandada era una obligación condicional y el dere-

cho del banco a percibir los arrendamientos nació tan pronto como y a medida que éstos se iban venciendo. Los siguientes artículos del Código Civil (1930) son aplicables:

"Art. 1067.—En las obligaciones condicionales la adquisición de los derechos, así como la resolución o pérdida de los ya adquiridos, dependerá del acontecimiento que constituya la condición.

"   .     .     .     .     .     .     .     .     .     .     .

"Art. 1073.—Los efectos de la obligación condicional de dar, una vez cumplida la condición, se retrotraen al día de la constitución de aquélla. Esto no obstante, cuando la obligación imponga recíprocas prestaciones a los interesados, se entenderán compensados unos con otros los frutos e intereses del tiempo en que hubiese estado pendiente la condición. Si la obligación fuere unilateral, el deudor hará suyos los frutos e intereses percibidos, a menos que por la naturaleza y circunstancias de aquélla deba inferirse que fué otra la voluntad del que la constituyó.

"En las obligaciones de hacer y de no hacer, los tribunales determinarán, en cada caso, el efecto retroactivo de la condición cumplida."

Sostenemos que la corte inferior no erró al resolver que de acuerdo con las disposiciones del Código Civil, supra, tan pronto como las propiedades hipotecadas fueron arrendadas los cánones de arrendamiento pasaron a ser propiedad del banco interventor, por virtud de la cesión que le hiciera la corporación demandada, debiendo retrotraerse el efecto de la obligación a la fecha en que ésta fué contraída, o sea el 19 de octubre de 1933. Por consiguiente, cuando se practicó el embargo en 26 de enero de 1934, ya los cánones en cuestión no pertenecían a la corporación demandada.

■ 5. Opinamos que el quinto error apuntado ha quedado claramente establecido. En su petición el interventor se limitó a pedir que se dejara sin efecto el embargo en cuanto al canon de $80 mensuales que pagaba la General Cigar Company. Nada se alegó y no existe referencia alguna en la prueba en cuanto a cánones de arrendamiento pagados por o que hubieran de pagar a la demandada los señores Candelario Morales y Anastasio Noriega. Y si bien

es verdad que en su certificado de diligenciamiento el márshal hace constar que embargó dichos cánones, también lo es que ni en dicho certificado ni en ninguna parte de los autos se ha hecho constar que tales cánones fueran pagados por el arrendamiento de propiedades cubiertas por la escritura de 19 de octubre de 1933.

*Por las razones expuestas se modifica la resolución ape lada para que sea efectiva solamente en cuanto al levantamiento del embargo trabado sobre los cánones pagados por la General Cigar Company, dejando en vigor dicho embargo en cuanto a los otros cánones embargados. Y así modificada se confirma.*

Los Jueces Señores Presidente del Toro y Asociado Córdova Dávila no intervinieron.